# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JEFF GRAVES, JEREMY REID, WAYNE HINTERGARDT, and MIKE CROWELL, individually and on behalf of all others similarly situated, | Case No.: |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| FCA US LLC, a Delaware Limited Liability Company, | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................... 1

II.    JURISDICTION ............................................................. 3

III.    VENUE ......................................................................... 4

IV.    PARTIES ....................................................................... 4

    A.    Plaintiffs ............................................................. 4

        1.    Jeff Graves (California) ............................. 4

        2.    Jeremy Reid (Kentucky) ............................ 5

        3.    Wayne Hintergardt (Oregon) ..................... 6

        4.    Mike Crowell (Tennessee) ......................... 7

    B.    Defendant ........................................................... 8

V.    FACTUAL ALLEGATIONS ......................................... 9

    A.    FCA Marketed the Fire Risk Vehicles as Safe, Durable, and Reliable ........................................... 9

    B.    The Spontaneous Fire Risk ................................ 14

    C.    The Fire Risk Vehicles Have Previously Been Recalled for Other Fire Risks ............................. 23

VI.    TOLLING OF THE STATUTE OF LIMITATIONS ................................. 25

    A.    Discovery Rule Tolling ...................................... 25

    B.    Estoppel ............................................................. 26

VII.    CLASS ALLEGATIONS ............................................. 26

VIII.    CLAIMS ..................................................................... 31

    A.    Nationwide Claims ............................................ 31

COUNT I VIOLATION OF THE MAGNUSON-MOSS
WARRANTY ACT (15 U.S.C. § 2301, *et seq.*) (Alleged by all
Plaintiffs on behalf of the Nationwide Class or, in the
alternative, the State Subclasses) ................................................................. 31

B.     State-Specific Claims ........................................................................ 35

1.     California ................................................................................. 35

COUNT II VIOLATION OF SONG-BEVERLY CONSUMER
WARRANTY ACT FOR BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY UNDER
CALIFORNIA LAW (Cal. Civ. Code §§ 1791.1 & 1792)
(Alleged by Plaintiff Jeff Graves on behalf of the California
Subclass) ...................................................................................................... 35

COUNT III UNJUST ENRICHMENT (COMMON LAW) (Alleged
by Plaintiff Jeff Graves on behalf of the California Subclass).................... 38

2.     Kentucky ................................................................................. 39

COUNT IV BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER KENTUCKY LAW
(Kentucky Rev. Stat. §§ 355.2, *et seq.*)  (Alleged by Plaintiff
Jeremy Reid on behalf of the Kentucky Subclass)...................................... 39

COUNT V UNJUST ENRICHMENT (COMMON LAW) (Alleged by
Plaintiff Jeremy Reid on behalf of the Kentucky Subclass)........................ 41

3.     Oregon..................................................................................... 42

COUNT VI BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER OREGON LAW (Or. Rev.
Stat. §72.3140) (Alleged by Plaintiff Wayne Hintergardt on
behalf of the Oregon Subclass).................................................................... 42

COUNT VII UNJUST ENRICHMENT (COMMON LAW) (Alleged
by Plaintiff Wayne Hintergardt on behalf of the Oregon
Subclass) ...................................................................................................... 44

4.     Tennessee ................................................................................ 45

COUNT VIII UNJUST ENRICHMENT (COMMON LAW) (Alleged
by Plaintiff Mike Crowell on Behalf of the Tennessee Subclass)............... 45

REQUEST FOR RELIEF ....................................................................... 46

DEMAND FOR JURY TRIAL ............................................................. 47

Plaintiffs file this lawsuit individually and on behalf of proposed Nationwide and statewide classes. Plaintiffs allege the following based on personal knowledge as to their own acts and experiences and, as to all other matters, based on the investigation of counsel:

## I.    INTRODUCTION

1.    The most important duty of a car manufacturer is to provide consumers with a safe car.

2.    FCA US LLC ("FCA") breached this fundamental duty by selling 2021–2023 Jeep Wrangler and Jeep Gladiator vehicles (the "Fire Risk Vehicles")[1] that were dangerous and prone to an underhood fire.

3.    On information and belief, the Fire Risk Vehicles contain a defect in the power steering pump electrical connector that can cause vehicle fires, both while the vehicles are being driven and when the vehicles are parked (the "Spontaneous Fire Risk").[2]

4.    The Spontaneous Fire Risk exposes putative class members to an unreasonable risk of accident, injury, death, or property damage if their vehicle catches fire while in operation or while the vehicle is parked at home, on the streets

---

[1] Plaintiffs reserve the right to identify additional class vehicles if facts show that additional vehicles are plagued by this same defect.

[2] *See* **Exhibit 1**, Steven Symes, *Jeep Wranglers And Gladiators Keep Catching Fire*, THE AUTO WIRE (Sept. 11, 2024), https://theautowire.com/2024/09/11/jeep-wranglers-and-gladiators-keep-catching-fire.

or near other buildings and structures, or in a parking lot. The Spontaneous Fire Risk also exposes passengers, other drivers on the road, neighbors, owners of other cars parked near the Fire Risk Vehicles, and other bystanders to an unreasonable risk of accident, injury, death, and property damage.

5.      As of the date of this filing, at least nine vehicle fires have been reported to FCA or NHTSA, one of which resulted in an injury.[3] The ongoing NHTSA investigation covers over 781,000 Jeep Wrangler and Gladiator vehicles.[4]

6.      FCA also knew or should have known about the Spontaneous Fire Risk before NHTSA opened its investigation based on consumer complaints of underhood fires in the Fire Risk Vehicles made to FCA, NHTSA, and elsewhere online.

7.      Many of the Fire Risk Vehicles have already been recalled for other defects that created a fire risk, although FCA has yet to issue a recall for the Spontaneous Fire Risk alleged herein.

8.      Hundreds of thousands of vehicles on the road and parked in or around structures and other vehicles are at risk of catching fire, and their owners are without a safely operable vehicle for an unknown and potentially lengthy period.

---

[3] *Id.*

[4] **Exhibit 2**, *Jeep Wrangler, Gladiator engine fires investigated by NHTSA*, THE DETROIT NEWS (Sept. 9, 2024),
    https://www.detroitnews.com/story/business/autos/chrysler/2024/09/09/jeep-engine-fires-investigated-by-nhtsa/75142212007/.

9. Because of FCA's breaches of implied warranties of merchantability and its failure to provide a remedy for the Spontaneous Fire Risk once the fires began occurring amongst putative class members, owners and lessees of Fire Risk Vehicles are injured in fact, incurred damages, and suffered ascertainable losses in money and property. Had Plaintiffs and the putative class members known of the Spontaneous Fire Risk, then they would either not have purchased or leased those vehicles or would have paid substantially less for them. Fires in the Fire Risk Vehicles also necessitate expensive repairs, car rentals, car payments, towing charges, property damage, time off work, loss of use, and other miscellaneous costs.

10. Plaintiffs bring this class action to redress FCA's misconduct. Plaintiffs seek damages and a repair under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312, and state laws of implied warranty and unjust enrichment.

## II.    JURISDICTION

11. This Court has original jurisdiction over this lawsuit under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), because Plaintiffs and Defendant are citizens of different states; there are more than 100 members of the Class and each Subclass (as defined herein); the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and class members reside across the United States. The citizenship of each party is described further below in the "Parties" section.

12.    This Court has personal jurisdiction over Defendant by virtue of its transactions and business conducted in this judicial district, and because Defendant is headquartered in Michigan. Defendant has transacted and done business, and violated statutory and common law, in the State of Michigan and in this judicial district.

### III.    VENUE

13.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant transacts substantial business and is headquartered in this district.

### IV.    PARTIES

**A.    Plaintiffs**

**1.    Jeff Graves (California)**

14.    Plaintiff and proposed class representative Jeff Graves ("Plaintiff" for purposes of this paragraph) is a resident and citizen of Manteca, California. On or about December 5, 2022, Plaintiff purchased a new 2023 Jeep Wrangler from Central Valley Chrysler Jeep Dodge Ram in Modesto, California. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business's name, and it was used primarily for transportation needs such as household errands and to drive to and from work. Through exposure and interaction with FCA, Plaintiff was aware of FCA's uniform and pervasive marketing messages of dependability and safety. These were primary reasons Plaintiff purchased the Fire Risk Vehicle.

However, despite touting the safety and dependability of the Fire Risk Vehicles, at no point did FCA or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Fire Risk. Plaintiff regularly services the vehicle but is now concerned about driving and parking it near his home and other structures due to the dangers resulting from the Spontaneous Fire Risk. In addition, it is difficult for Plaintiff to park the Fire Risk Vehicle away from structures and other vehicles. Plaintiff would not have purchased the vehicle, or would have paid less for it, had Plaintiff known about the Spontaneous Fire Risk.

### 2.     Jeremy Reid (Kentucky)

15.     Plaintiff and proposed class representative Jeremy Reid ("Plaintiff" for purposes of this paragraph) is a resident and citizen of Pikeville, Kentucky. On or about April 26, 2021, Plaintiff purchased a new 2021 Jeep Wrangler Sahara PHEV from Dan Cummins Chrysler Dodge Jeep RAM of Paris in Paris, Kentucky. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use— specifically his teenage daughter's use—in that this was not purchased by or on behalf of a business and was not titled in a business's name. It is used primarily for his teenage daughter's personal transportation needs. Through exposure and interaction with FCA, Plaintiff was aware of FCA's uniform and pervasive marketing messages of dependability and safety. These were primary reasons Plaintiff purchased the Fire Risk Vehicle. However, despite touting the safety and

dependability of the Fire Risk Vehicles, at no point did FCA or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Fire Risk. Plaintiff regularly services the vehicle but is concerned about his daughter driving and parking it at home and college and near other structures due to the dangers resulting from the Spontaneous Fire Risk. In September 2024, Plaintiff learned the vehicle was also subject to another fire risk under recall 24V720000, and his daughter stopped charging it and began parking it away from structures and other vehicles to the best of her ability, but this is difficult and inconvenient, particularly while she is at school. Plaintiff would not have purchased the vehicle, or would have paid less for it, had Plaintiff known about the Spontaneous Fire Risk.

### 3.     Wayne Hintergardt (Oregon)

16.     Plaintiff and proposed class representative Wayne Hintergardt ("Plaintiff" for purposes of this paragraph) is a resident and citizen of Cave Junction, Oregon. On or about April 28, 2024, Plaintiff purchased a used 2021 Jeep Wrangler Sahara PHEV from Tonkin Chrysler Jeep Dodge Ram Fiat in Milwaukie, Oregon. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business's name, and it is used primarily for transportation needs such as household errands and to drive to and from work. Through exposure and interaction with FCA, Plaintiff was aware of FCA's uniform and pervasive marketing messages of

dependability and safety. These were primary reasons Plaintiff purchased the Fire Risk Vehicle. However, despite touting the safety and dependability of the Fire Risk Vehicles, at no point did FCA or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Fire Risk. Plaintiff regularly services the vehicle but is concerned about driving and parking it near his home and other structures due to the dangers resulting from the Spontaneous Fire Risk. In September 2024, learned his vehicle was also subject to another fire risk under recall 24V720000, and he began parking it away from structures and other vehicles. This is difficult and inconvenient, and recently resulted in his vehicle being vandalized. Plaintiff would not have purchased the vehicle, or would have paid less for it, had Plaintiff known about the Spontaneous Fire Risk.

### 4.  Mike Crowell (Tennessee)

17.    Plaintiff and proposed class representative Mike Crowell ("Plaintiff" for purposes of this paragraph) is a resident and citizen of Eads, Tennessee. On or about January 4, 2024, Plaintiff purchased a new 2023 Jeep Gladiator Rubicon from Homer Skelton Chrysler Dodge Jeep Ram in Millington, Tennessee. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business's name, and it is used primarily for transportation needs such as household errands. Through exposure and interaction with FCA, Plaintiff was aware of FCA's uniform

and pervasive marketing messages of dependability and safety. These were primary reasons Plaintiff purchased the Fire Risk Vehicle. However, despite touting the safety and dependability of the Fire Risk Vehicles, at no point did FCA or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Fire Risk. Plaintiff regularly services the vehicle but is now concerned about driving and parking it near his home and other structures due to the dangers resulting from the Spontaneous Fire Risk. In addition, it is difficult for Plaintiff to park the Fire Risk Vehicle away from structures, other vehicles, and the woods surrounding his property. Plaintiff would not have purchased the vehicle, or would have paid less for it, had Plaintiff known about the Spontaneous Fire Risk.

## B.    Defendant

18.    Defendant FCA US LLC ("FCA"), formerly known as Chrysler Group, is a Delaware limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by Stellantis N.V., a Dutch corporation headquartered in Amsterdam, Netherlands. FCA's principal place of business and headquarters is at 1000 Chrysler Drive, Auburn Hills, MI 48326.

19.    FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles. FCA's Chrysler brand is one of the "Big Three" American automobile brands. FCA engages

in commerce by distributing and selling new and used passenger cars and motor vehicles under its Chrysler, Dodge, Jeep, and Ram brands.

20.     FCA, through its various entities, designs, manufactures, markets, distributes, and sells automobiles throughout the U.S. and worldwide. FCA and/or its agents designed and manufactured the Fire Risk Vehicles. FCA also developed and disseminated the owner's manuals and warranty booklets, advertisements, brochures, and other promotional materials relating to the Fire Risk Vehicles, with the intent that such documents be purposely distributed throughout all fifty states. FCA is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

## V.     FACTUAL ALLEGATIONS

## A.     FCA Marketed the Fire Risk Vehicles as Safe, Durable, and Reliable

21.     Throughout its marketing brochures for the Fire Risk Vehicles, FCA emphasizes the vehicles' safety, durability, and reliability, evidencing the materiality of these features to buyers.

22.    The brochures for the Fire Risk Vehicles prominently advertise their advanced safety features:

**ADVANCED SAFETY & SECURITY SYSTEMS**

WHEN IT COMES TO YOUR WELL-BEING ON THE ROAD, JEEP® GLADIATOR IS READY AND WILLING TO STAND AS A CONSTANT GUARDIAN. GLADIATOR ENVELOPS YOU WITH MORE THAN 80 STANDARD AND AVAILABLE SAFETY & SECURITY FEATURES. SENSORS AND CAMERAS KEEP WATCH AROUND YOUR PERIMETER TO HELP PROVIDE PEACE OF MIND.

2021–2023 Jeep Gladiator Brochures.[5]

**ADVANCED SAFETY & SECURITY SYSTEMS**

WHEN IT COMES TO YOUR WELL-BEING ON THE ROAD, JEEP® WRANGLER IS READY AND WILLING TO STAND AS A CONSTANT GUARDIAN. WRANGLER ENVELOPS YOU WITH MORE THAN 75 STANDARD AND AVAILABLE SAFETY & SECURITY FEATURES. SENSORS AND CAMERAS KEEP WATCH AROUND YOUR PERIMETER FOR COMPLETE PEACE OF MIND.

2021–2022 Jeep Wrangler Brochures.[6]

---

[5]    *2021 Gladiator*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/-Jeep_US%20Gladiator_2021.pdf (last visited Nov. 7, 2024); *2022 Gladiator*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20Gladiator_2022.pdf (last visited Nov. 7, 2024); *2023 Gladiator*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20-Gladiator_2023.pdf (last visited Nov. 7, 2024).

[6]    *2021 Wrangler*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Wrangler/-Jeep_US%20Wrangler_2021.pdf (last visited Nov. 7, 2024); *2022 Wrangler*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Wrangler/Jeep_US%20Wrangler_2022.pdf (last visited Nov. 7, 2024).

- 10 -



2021–2023 Jeep Gladiator Brochures.[7]



2021–2022 Jeep Wrangler Brochures.[8]

---

[7]  *2021 Gladiator*, Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Gladiator/-Jeep_US%20Gladiator_2021.pdf (last visited Nov. 7, 2024); *2022 Gladiator*, Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20Gladiator_2022.pdf (last visited Nov. 7, 2024); *2023 Gladiator*, Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20-Gladiator_2023.pdf (last visited Nov. 7, 2024).

[8]  *2021 Wrangler*, Auto-Brochures.com, https://www.auto-brochures.com/makes/Jeep/Wrangler/-Jeep_US%20Wrangler_2021.pdf (last visited Nov. 7, 2024); *2022 Wrangler*, Auto-Brochures.com, https://www.auto-

23.    The brochures also advertise the vehicles' superior quality and workmanship:



2021 Jeep Gladiator Brochure.[9]

---

brochures.com/makes/Jeep/Wrangler/Jeep_US%20Wrangler_2022.pdf (last visited Nov. 7, 2024).

[9]    *2021    Gladiator*,    AUTO-BROCHURES.COM,    https://www.auto-brochures.com/makes/Jeep/Gladiator/-Jeep_US%20Gladiator_2021.pdf    (last visited Nov. 7, 2024).



**THE TRUCK THAT DOES IT ALL:** HAULS, TOWS, AND DELIVERS YOU TO THE GREAT WIDE OPEN WITH LEGENDARY CAPABILITY, OUTSTANDING UTILITY, INTUITIVE TECHNOLOGY AND TRADEMARK OPEN-AIR FREEDOM THAT THE JEEP. BRAND IS KNOWN FOR.

2022 Jeep Gladiator Brochure.[10]

2023 Jeep Gladiator Brochure.[11]

---

[10] *2022 Gladiator*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20Gladiator_2022.pdf (last visited Nov. 7, 2024).

[11] *2023 Gladiator*, AUTO-BROCHURES.COM, https://www.auto-brochures.com/makes/Jeep/Gladiator/Jeep_US%20-Gladiator_2023.pdf (last visited Nov. 7, 2024).



2021 Jeep Wrangler Brochure[12]

proven off-road capability
starts with 80 years of innovation

IN 1941, THE JEEP. BRAND OPENED THE DOOR TO AUTHENTIC
CAPABILITY BY DEVELOPING THE FIRST 4WD SYSTEM, AND
EVER SINCE, IT'S BEEN MOVING THE WORLD FORWARD WITH
INDUSTRY-CHANGING ENGINEERING INNOVATIONS THAT GIVE
YOU PERMISSION TO GO ANYWHERE, DO ANYTHING.

2021 Jeep Wrangler Brochure[13]

**B.    The Spontaneous Fire Risk**

24.    On September 6, 2024, the National Highway Traffic Safety

Administration ("NHTSA") opened Investigation No. PE24024 into a defect causing

---

[12]    *2021   Wrangler*,   AUTO-BROCHURES.COM,   https://www.auto-brochures.com/makes/Jeep/Wrangler/-Jeep_US%20Wrangler_2021.pdf   (last visited Nov. 7, 2024).

[13]    *Id.*

underhood fires in an estimated 781,459 model year 2021–2023 Jeep Wrangler and Gladiator vehicles.[14]

25.    To date, there have been nine engine compartment fires in the Fire Risk Vehicles that are suspected to originate from the power steering pump electric connector located in the passenger front side of the engine compartment.[15]

26.    At least one injury was reported from these fires.[16]

27.    The majority of the underhood fires occurred while the vehicle's ignition was off.[17]

28.    As NHTSA states, "An ignition 'OFF' vehicle fire can result in an increased risk of occupant injury, injury to persons outside the vehicle, and property damage, with little to no warning."[18]

29.    NHTSA's ongoing investigation is "assess[ing] the cause, scope, and frequency of the alleged defect."[19]

30.    Plainly, the Fire Risk Vehicles are not suitable and safe for use in an intended and reasonably foreseeable manner.

---

[14]    *ODI Resume PE24024*, NHTSA.GOV (Sept. 6, 2024), https://static.nhtsa.gov/odi/inv/2024/INOA-PE24024-19581.pdf (last visited Nov. 7, 2024).

[15]    *Id.*

[16]    *Id.*

[17]    *Id.*

[18]    *Id.*

[19]    *Id.*

31.     Plaintiffs' counsel continues to investigate whether additional model years of the Fire Risk Vehicles are also plagued with the Spontaneous Fire Risk.

32.     On information and belief, FCA knew or should have known about the Spontaneous Fire Risk well before NHTSA opened an investigation into the problem, as evidenced by consumer complaints lodged with FCA directly and with NHTSA and elsewhere online.

33.     On information and belief, FCA received complaints about underhood fire in the Fire Risk Vehicles no later than March 2021.[20]

34.     All vehicle manufacturers, including FCA, are required by law to routinely monitor and analyze NHTSA complaints to determine whether vehicles or components should be recalled due to safety concerns. Thus, FCA has knowledge of all NHTSA complaints filed concerning the vehicles it manufactures, including the Fire Risk Vehicles. *See* TREAD Act, Pub. L. No. 106- 414, 114 Stat. 1800 (2000).

35.     Complaints submitted to FCA and NHTSA via Vehicle Owner Questionnaires ("VOQ") reveal multiple instances of Fire Risk Vehicles catching on fire.

36.     In March 2021, an underhood fire in a model year 2021 Jeep Wrangler:[21]

---

[20] *See Complaints, NHTSA ID: 11403621*, NHTSA.GOV (Mar. 18, 2021), https://www.nhtsa.gov/?nhtsaId=11403621 (last visited Nov. 7, 2024).
[21] *Id.*

> NHTSA ID Number: 11403621
> Incident Date: March 16, 2021
> Consumer Location: RUMSON, NJ
> Vehicle Identification Number: 1C4HJXENXMW****
> Summary of Complaint: OUR 2021 JEEP STARTED
> SMOKING IN THE ENGINE AND WITHIN 10
> MINUTES BURST INTO FLAMES. THE ENTIRE
> FRONT END WAS DAMAGED BEYOND REPAIR /
> BURNED AND FIRE STATIONS HAD TO PUT OUT
> THE FIRE. MY DAUGHTER, DOGS AND I WERE
> ABLE TO MAKE IT OUT OF THE CAR BUT VERY
> SCARY.
> 1 Affected Product: 2021 Jeep Wrangler

37.    In September 2021, an underhood fire in a model year 2021 Jeep

Wrangler:[22]

> NHTSA ID Number: 11436759
> Incident Date: September 27, 2021
> Consumer Location: BELLINGHAM, WA
> Vehicle Identification Number: 1C4HJXCN3MW****
> Summary of Complaint: The engine caught on fire after a
> short drive. The fire burned the entire top of the rear of the
> engine and completely through the wiring harness before
> I could extinguish it with a fire extinguisher and water.
> The fire appears to have started at the top rear of the engine
> where the fuel line enters the intake. The manufacturer,
> Stellantis, hired a special investigator from EAA/Bosch to
> look at it, and he agrees that it is similar to fires in similar
> engines that were recalled in October 2020, NHTSA
> Campaign number 21V-665. Stellantis has not responded
> to repeated requests for resolution.
> 1 Affected Product: 2021 Jeep Wrangler

---

[22]    *Complaints, NHTSA ID: 11436759*, NHTSA.GOV (Oct. 14, 2021),
https://www.nhtsa.gov/?nhtsaId=11436759 (last visited Nov. 7, 2024).

38.     In November 2021, an underhood fire in a model year 2021 Jeep Wrangler:[23]

> NHTSA ID Number: 11442560
> Incident Date: November 13, 2021
> Consumer Location: WICKENBURG, AZ
> Vehicle Identification Number: 1C4HJXEG4MW****
> Summary of Complaint: My 2021 Jeep Wrangler with 1900 miles caught on fire and was a total loss, preliminary investigation believes the cause of the fire to be a gas leak. There were no indications or warning lights, saw black smoke coming from the engine compartment by the time I pulled over and got out of the vehicle it was on fire and within minutes the entire car was engulfed by flames and it was a total loss.
> 1 Affected Product: 2021 Jeep Wrangler

39.     In May 2023, an underhood fire in a model year 2023 Jeep Wrangler:[24]

> NHTSA ID Number: 11525680
> Incident Date: May 11, 2023
> Consumer Location: Unknown
> Vehicle Identification Number: 1C4JJXP61PW****
> Summary of Complaint: I am not sure if this is something that should be reported or not. My Jeep caught on fire in a drive thru on 5/11/23. It was only 3.5 months old and had 3,465 miles on it. I saw smoke coming from under the hood, then big black billowing smoke, when some guys got the hood open there were flames coming from behind the engine. They were able to put it out with a fire extinguisher but it caused alot of damage. It is available for inspection but I would need to know ASAP since it is at the dealer. About 3 minutes prior I was on the highway and this could have ended up so much worse as I had my

---

[23] *Complaints, NHTSA ID: 11442560*, NHTSA.GOV (Dec. 3, 2021), https://www.nhtsa.gov/?nhtsaId=11442560 (last visited Nov. 7, 2024).

[24] *Complaints, NHTSA ID: 11525680*, NHTSA.GOV (June 6, 2023), https://www.nhtsa.gov/?nhtsaId=11525680 (last visited Nov. 7, 2024).

two dogs with me as well. I contacted Jeep and they sent Engineering Analysis Associates/Bosch Automotive Service Solutions out to examine the car and they said "the information at hand would not permit us to associate the fire with a manufacturing or assembly error". No reason for the fire was given. Vehicle was inspected by insurance rep, investigator hired by the manufacturer. Police and fire dept were on scene at the time but did not create a report, just gave me an incident #. No warnings, messages or anything warned of the fire. I was able to drive it around to the front of the building to get it away from the building and other cars while their was smoke coming out of it. No warnings lights came on at all that I could see on the dash. I want to report this incase any other Wrangler 4XE's end up having the same issue.

1 Affected Product: 2023 Jeep Wrangler

40.    In August 2023, a fire in a model year 2022 Jeep Gladiator:[25]

NHTSA ID Number: 11585273
Incident Date August 6, 2023
Consumer Location NEW FRANKEN, WI
Vehicle Identification Number 1C6HJTFG9NL****
Summary of Complaint: My 2022 Jeep Gladiator burned to the ground with 2,500 miles. Jeep sent out their fire investigator and they said it was not a manufacture defect on their part. Allstate sent out their fire investigator and he said it WAS a Jeep manufacturer issue. Both Jeep and Allstate denied to give me copies of the report findings. My Jeep was parked and engine cold when it started smoldering and went up in flames. my VIN is [XXX] . I lost 12 months of payments plus $1800 in Ceramic coating along with another $2,000. in additional add ons. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).

1 Affected Product: 2022 Jeep Gladiator

---

[25]    *Complaints, NHTSA ID: 11585273*, NHTSA.GOV (Apr. 25, 2024), https://www.nhtsa.gov/?nhtsaId=11585273 (last visited Nov. 7, 2024).

41.   In January 2024, an underhood fire in a model year 2022 Jeep Gladiator:[26]

> NHTSA ID Number: 11567979
> Incident Date: January 24, 2024
> Consumer Location: AUBURN, WA
> Vehicle Identification Number: 1C6JJTBG6NL****
> Summary of Complaint: Our 2022 Gladiator has 1,758 miles on it and no modifications. It was last driven about two weeks ago. It burned to the ground [XXX] while parked next to our house. The fire started in the engine compartment. There were no warnings of symptoms and our jeep app showed everything was normal when last driven. It was investigated by the VRFA and I am waiting for their report. Insurance has not yet inspected. We reported it to the dealership we bought it from. On the [XXX] website, there is another 2022 Gladiator, also low mileage, that also burned to the ground while parked. That person's insurance stated that they believe it burned due to a manufacturer defect but there are no recalls. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
> 1 Affected Product: 2022 Jeep Gladiator

42.   In January 2024, an underhood fire in a model year 2021 Jeep Wrangler:[27]

> NHTSA ID Number: 11570607
> Incident Date: January 6, 2024
> Consumer Location: LAYTON, UT
> Vehicle Identification Number: 1C4JJXFM2MW****

---

[26] *Complaints, NHTSA ID: 11567979*, NHTSA.GOV (Jan. 26, 2024), https://www.nhtsa.gov/?nhtsaId=11567979 (last visited Nov. 7, 2024).

[27] *Complaints, NHTSA ID: 11570607*, NHTSA.GOV (Feb. 7, 2024), https://www.nhtsa.gov/?nhtsaId=11570607 (last visited Nov. 7, 2024).

Summary of Complaint: Fire started about 15 minutes after parking the Jeep. Flames and smoke first appeared in engine compartment on passenger side where an electrical panel is located. Fire spread quickly and burnt out entire front of vehicle before the fire department was able to extinguish the flames. Vehicle is a total loss.
1 Affected Product: 2021 Jeep Wrangler

43.    In February 2024, an underhood fire in a model year 2022 Jeep Gladiator:[28]

NHTSA ID Number: 11573476
Incident Date February 19, 2024
Consumer Location FORESTVILLE, CA
Vehicle Identification Number 1C6JJTBM7NL****
Summary of Complaint: I was driving my Jeep Gladiator on [XXX] Shasta Co, CA, on a snowy mountain highway. I had my husband, two children and two dogs in the vehicle. Without warning the power steering went out. Within 20 seconds a steering wheel light appeared on the dash. Within approximately 20 more seconds, I was able to pull over into a plowed turnout. As soon as we stopped the vehicle we noticed a fire in the engine compartment. We were able to extinguish it within a few minutes with our fire extinguisher. The vehicle has approximately 15000 miles on it and is under warranty. It is currently under inspection to determine if it falls under warranty. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
1 Affected Product: 2022 Jeep Gladiator

---

[28]   *Complaints, NHTSA ID: 11573476*, NHTSA.GOV (Feb. 22, 2024), https://www.nhtsa.gov/?nhtsaId=11573476 (last visited Nov. 7, 2024).

44.    In March 2024, an underhood fire in a model year 2022 Jeep Wrangler:[29]

> NHTSA ID Number: 11576144
> Incident Date: March 6, 2024
> Consumer Location: TITUSVILLE, NJ
> Vehicle Identification Number: 1C4HJXEM2NW****
> Summary of Complaint: The detective reported that the 2022 Jeep Wrangler spontaneously caught on fire. The contact stated that after the owner parked the vehicle, approximately six hours later a fire occurred which started in the engine compartment of the vehicle. The fire department was called to the scene and extinguished the flames. During the incident the vehicle was destroyed. No injuries were reported. A police and fire report was taken at the scene and the vehicle was later tow away. The cause of the failure was not yet determined. The manufacturer and local dealer were not notified by the contact. The contact was concern that the vehicle had experienced the same failure listed in the NHTSA Campaign Number: 23V787000(Electrical System) which did not include the diesel models. The contact indicated that the vehicle had experienced that same failure listed in the recall. The failure mileage was unknown.
> 1 Affected Product: 2022 Jeep Wrangler

45.    Despite FCA's knowledge of the serious risk of fire in the Fire Risk Vehicles, it has done nothing to remedy the problem or even warn consumers.

---

[29]   *Complaints, NHTSA ID: 11576144*, NHTSA.GOV (Mar. 8, 2024), https://www.nhtsa.gov/?nhtsaId=11576144 (last visited Nov. 7, 2024).

## C.     The Fire Risk Vehicles Have Previously Been Recalled for Other Fire Risks

46.     Aside from the fire risk arising from the power steering pump electric connector, the Fire Risk Vehicles have previously been recalled for other issues that could result in a vehicle fire.

47.     Certain model year 2021 Jeep Wranglers and Gladiators were recalled by FCA in January 2021 under campaign 21V028000 for clutch pressure plates that could overheat and fracture, increasing the risk of a fire.[30] In or around March 2021, FCA began offering a software upgrade to reduce engine torque capability when the clutch assembly temperatures rise to a level that may damage the inner pressure plate.[31]

48.     But in February 2023, FCA re-recalled certain model year 2021 Jeep Wranglers and Gladiators and recalled certain 2022–2023 Jeep Wranglers and Gladiators under campaign 23V116000 for the same overheating clutch pressure plates issue that could result in a fire.[32] Starting in November 2023, FCA began

---

[30]     *Recalls, NHTSA ID: 21V028000*, NHTSA.GOV (Jan. 28, 2021), https://www.nhtsa.gov/-/?nhtsaId=21V028000 (last visited Nov. 7, 2024).

[31]     *Part 573 Safety Recall Report 21V-028*, NHTSA.GOV (July 1, 2021), https://static.nhtsa.gov/odi/rcl/2021/RCLRPT-21V028-6783.PDF (last visited Nov. 7, 2024).

[32]     *Recalls, NHTSA ID: 23V116000*, NHTSA.GOV (Feb. 23, 2023), https://www.nhtsa.gov/?nhtsaId=23V116000 (last visited Nov. 7, 2024).

offering a recall repair that involved a clutch assembly replacement and updated software for the vehicle that mitigates safety risks related to the clutch assembly.[33]

49.     Certain model year 2021–2022 Jeep Wranglers were recalled by FCA in March 2023 under campaign 23V191000 for an unnecessary frame stud that could puncture the fuel tank in a crash, increasing the risk for fire.[34] FCA's recall remedy was to inspect and, if necessary, remove the frame stud and apply paint.[35]

50.     Certain model year 2021–2023 Jeep Wrangler PHEVs were recalled by FCA in November 2023 under campaign 23V787000 for a fire risk arising from the high voltage battery.[36] Owners were directed to stop charging the vehicles and park away from structures and other vehicles until they obtained the recall repair.[37] In or around March 2024, FCA began offering a software upgrade and HV battery replacement where necessary as the recall repair.[38]

---

[33] *Part 573 Safety Recall Report 23V-116*, NHTSA.GOV (July 2, 2024), https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V116-1296.PDF (last visited Nov. 7, 2024).

[34] *Recalls, NHTSA ID: 23V191000*, NHTSA.GOV (Mar. 23, 2023), https://www.nhtsa.gov/?nhtsaId=23V191000 (last visited Nov. 7, 2024).

[35] *Part 573 Safety Recall Report 23V-191*, NHTSA.GOV (Mar. 28, 2023), https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V191-3459.PDF (last visited Nov. 7, 2024).

[36] *Recalls, NHTSA ID: 23V787000*, NHTSA.GOV (Nov. 22, 2023), https://www.nhtsa.gov/?nhtsaId=23V787000 (last visited Nov. 7, 2024).

[37] *Id.*

[38] *Part 573 Safety Recall Report 23V-787*, NHTSA.GOV (Feb. 22, 2024), https://static.nhtsa.gov/odi/rcl/2023/RCLRPT-23V787-9402.PDF (last visited Nov. 7, 2024).

51.     But in September 2024, FCA re-recalled certain model year 2021–2023 Jeep Wrangler PHEVs under campaign 24V720000 for the same HV battery fire risk.[39] On information and belief, there is currently no available remedy.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

52.     Because FCA concealed the existence of the Spontaneous Fire Risk, class members had no way of knowing about the unreasonable fire risk of the Fire Risk Vehicles.

53.     Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Class and Subclasses could not have discovered through the exercise of reasonable diligence that FCA was concealing the Spontaneous Fire Risk complained of herein.

54.     Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that FCA did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that FCA had concealed information about the unreasonable fire risk of

---

[39]    *Recalls, NHTSA ID: 24V720000*, NHTSA.GOV (Sept. 27, 2024), https://www.nhtsa.gov/?nhtsaId=24V720000 (last visited Nov. 7, 2024).

the Fire Risk Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.

55.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Fire Risk Vehicles.

**B.    Estoppel**

56.    FCA was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the fire risk of the Fire Risk Vehicles.

57.    FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the fire risk of the Fire Risk Vehicles.

58.    Based on the foregoing, FCA is estopped from relying on any statutes of limitations in defense of this action.

## VII.   CLASS ALLEGATIONS

59.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclasses:

> **Nationwide Class**: All persons or entities who purchased or leased one or more model year 2021–2023 Jeep Gladiator and Wrangler vehicles (the "Fire Risk Vehicles").

**California Subclass**: All persons or entities who purchased or leased one or more of the Fire Risk Vehicles in the State of California.

**Kentucky Subclass**: All persons or entities who purchased or leased one or more of the Fire Risk Vehicles in the State of Kentucky.

**Oregon Subclass**: All persons or entities who purchased or leased one or more of the Fire Risk Vehicles in the State of Oregon.

**Tennessee Subclass**: All persons or entities who purchased or leased one or more of the Fire Risk Vehicles in the State of Tennessee.

60.     Plaintiffs assert claims under the laws of each state set forth below.

61.     Excluded from the definitions of each Class and Subclass are any personal injury or property damages claims resulting from the fires or explosions caused by the Fire Risk Vehicles. Also excluded from the Class and Subclasses are FCA and its subsidiaries and affiliates; all persons who make a timely election to be excluded from this action; governmental entities; the Judge to whom this case is assigned and his/her immediate family; and Plaintiffs' Counsel. Plaintiffs reserve the right to revise the Class and Subclass definitions based upon information learned through discovery.

62.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

63.    This action has been brought and may be properly maintained on behalf of the Classes and Subclasses proposed herein under Federal Rule of Civil Procedure 23.

64.    **Numerosity**. Federal Rule of Civil Procedure 23(a)(1): The members of each Class and Subclass are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. For purposes of this complaint, Plaintiffs allege that there are estimated to be more than 781,000 Fire Risk Vehicles in the Nationwide Class. The precise number of Class and Subclass members is unknown to Plaintiffs but may be ascertained from FCA's books and records. Class and Subclass members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

65.    **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class and Subclass members, including, without limitation:

      a.    Whether FCA engaged in the conduct alleged herein;

      b.    Whether the Spontaneous Fire Risk creates an unreasonable risk of fires in the Fire Risk Vehicles;

      c.    When FCA first knew about the Spontaneous Fire Risk;

d.   Whether FCA designed, manufactured, marketed, and distributed the Fire Risk Vehicles with the Spontaneous Fire Risk;

f.   Whether FCA's conduct renders it liable for breach of the implied warranty of merchantability;

h.   Whether FCA has been unjustly enriched at the expense of Plaintiffs and the Class and Subclasses;

i.   Whether Plaintiffs and the other Class and Subclass members overpaid for their vehicles at the point of sale; and

j.   Whether Plaintiffs and the other Class and Subclass members are entitled to damages and other monetary relief and, if so, in what amount.

66.   **Typicality**: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class and Subclass members' claims because, among other things, all Class and Subclass members were comparably injured through FCA's wrongful conduct as described herein.

67.   **Adequacy**: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class and Subclass representatives because their interests do not conflict with the interests of the other members of the Class and Subclasses they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class and Subclasses' interests will be fairly and adequately protected by Plaintiffs and their counsel.

68.   **Superiority**: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class and Subclass members are relatively small compared to the burden and expense that would be required to individually litigate their claims against FCA, so it would be impracticable for the members of the Class and Subclasses to individually seek redress for FCA's wrongful conduct. Even if Class and Subclass members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.  CLAIMS

**A.      Nationwide Claims**

### COUNT I

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (Alleged by all Plaintiffs on behalf of the Nationwide Class
### or, in the alternative, the State Subclasses)

69.      Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

70.      Plaintiffs bring this claim on behalf of the Nationwide Class.

71.      This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)–(d).

72.      The Fire Risk Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiffs and Nationwide Class members are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

73.      FCA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

74.      15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

75.      FCA provided Plaintiffs and Nationwide Class members with an implied warranty of merchantability in connection with the purchase or lease of their

vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, FCA warranted that the Fire Risk Vehicles engines were fit for their ordinary purpose as safe vehicles and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

76.     FCA breached its implied warranties, as described in more detail herein, and is therefore liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Fire Risk Vehicles share a common defect in that they are all equipped with a power steering pump electrical connector that makes the vehicles susceptible to a risk of spontaneously catching on fire, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Fire Risk Vehicles as well as their homes, passengers, and bystanders. This defect rendered the Fire Risk Vehicles, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use.

77.     As alleged herein, FCA knew or should have known of the defect.

78.     Any effort by FCA to limit the implied warranties in a manner that would exclude coverage of the Fire Risk Vehicles is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

79.    Any limitations FCA might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between FCA and Plaintiffs, as, at the time of purchase and lease, Plaintiffs had no other options for purchasing warranty coverage other than directly from FCA.

80.    Any limitations FCA might seek to impose on its warranties are substantively unconscionable. FCA knew that the Fire Risk Vehicles were defective and that the Fire Risk Vehicles could spontaneously ignite when used as intended long before Plaintiffs and the Class. FCA failed to disclose this defect to Plaintiffs and the Class. Thus, enforcement of the durational limitations on the warranties is harsh and would shock the conscience.

81.    Plaintiffs have had sufficient direct dealings with FCA to establish privity of contract between FCA and Plaintiffs. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Fire Risk Vehicles and have no rights under the warranty agreements provided with the Fire Risk Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Fire Risk Vehicles are dangerous instrumentalities due to the aforementioned defect, as spontaneous fires present an unreasonable risk of death, serious bodily harm and/or property damage to lessees

and owners of the Fire Risk Vehicles as well as their homes, other nearby structures and vehicles, passengers and bystanders.

82.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give FCA notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

83.    Plaintiffs would suffer economic hardship if they returned their Fire Risk Vehicles but did not receive the return of all payments made by them. Because FCA will not acknowledge any revocation of acceptance and immediately return any payments made, Plaintiffs have not re-accepted their Fire Risk Vehicles by retaining them.

84.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other Nationwide Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by

Plaintiffs and the Nationwide Class members in connection with the commencement and prosecution of this action.

85.    Plaintiffs also seek the establishment of an FCA-funded program for Plaintiffs and Nationwide Class members to recover out-of-pocket costs incurred in attempting to rectify and/or mitigate the effects of the Spontaneous Fire Risk in their Fire Risk Vehicles.

**B.    State-Specific Claims**

    **1.    California**

**COUNT II**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY
ACT FOR BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER CALIFORNIA LAW
(Cal. Civ. Code §§ 1791.1 & 1792)
(Alleged by Plaintiff Jeff Graves on behalf of the California Subclass)**

86.    Plaintiff Jeff Graves ("Plaintiff" for purposes of this claim) and the California Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

87.    Plaintiff brings this claim on behalf of himself and the California Subclass.

88.    Plaintiff and the California Subclass members are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

89.    The Fire Risk Vehicles are "consumer goods" within the meaning of Civ. Code § 1791(a).

90.    FCA is the "manufacturer" of the Fire Risk Vehicles within the meaning of Cal. Civ. Code § 1791(j).

91.    FCA impliedly warranted to Plaintiff and the California Subclass that the Fire Risk Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Fire Risk Vehicles do not have the quality that a buyer would reasonably expect and were therefore not merchantable.

92.    Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

(2)    Are fit for the ordinary purposes for which such goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

93.    The Fire Risk Vehicles were not merchantable when sold or leased because they pose an unreasonable risk of underhood fire due to the Spontaneous Fire Risk described herein. Without limitation, the Fire Risk Vehicles share a common defect in that they are all equipped with a power steering pump electrical connector that makes the vehicles susceptible to a risk of spontaneous combustion, causing an unreasonable risk of death, serious bodily harm and/or property damage

to lessees and owners of the Fire Risk Vehicles as well as their homes, passengers and bystanders. This defect renders the Fire Risk Vehicles when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

94.     FCA breached the implied warranty of merchantability by selling Fire Risk Vehicles containing defects leading to the sudden incineration of the vehicles during ordinary operating conditions, or while off and parked. This defect has deprived Plaintiff and the California Subclass members of the benefit of their bargain.

95.     Notice of breach is not required because Plaintiff and the California Subclass members did not purchase their automobiles directly from FCA. Nonetheless, Plaintiffs' counsel sent notification to FCA on or about November 7, 2024.

96.     Plaintiff and the other California Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Fire Risk Vehicles to Plaintiff and California Subclass members.

97.     As a direct and proximate result FCA's breach of the implied warranty of merchantability, Plaintiff and the California Subclass members received goods whose dangerous condition now renders them at least partially inoperable and substantially impairs their value. Plaintiff and the California Subclass members have

been damaged as they overpaid for their vehicles, and now suffer the partial or complete loss of use of their Fire Risk Vehicles.

98.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and the California Subclass members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Fire Risk Vehicles, or the overpayment or diminution in value of their Fire Risk Vehicles.

99.    Under Cal. Civ. Code § 1794, Plaintiff and the California Subclass members are entitled to costs and attorneys' fees.

## COUNT III

### UNJUST ENRICHMENT
### (COMMON LAW)
**(Alleged by Plaintiff Jeff Graves on behalf of the California Subclass)**

100.   Plaintiff Jeff Graves ("Plaintiff" for purposes of this claim) and the California Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

101.   Plaintiff brings this claim on behalf of himself and the California Subclass.

102.   FCA has received and retained a benefit from Plaintiff and California Subclass members and inequity has resulted.

103.   FCA has benefitted from selling, leasing, and distributing the Fire Risk Vehicles for more than they were worth as a result of FCA's conduct, and Plaintiff

and California Subclass members have overpaid for the Fire Risk Vehicles and been forced to pay other costs.

104. Thus, Plaintiff and California Subclass conferred a benefit on FCA.

105. It is inequitable for FCA to retain these benefits.

106. Plaintiff and California Subclass were not aware of the true facts about the Fire Risk Vehicles and did not benefit from FCA's conduct.

107. FCA knowingly accepted the benefits of its unjust conduct.

108. As a result of FCA's conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

**2. Kentucky**

**COUNT IV**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER KENTUCKY LAW
(Kentucky Rev. Stat. §§ 355.2, *et seq.*)
(Alleged by Plaintiff Jeremy Reid on behalf of the Kentucky Subclass)**

109. Plaintiff Jeremy Reid ("Plaintiff" for purposes of this claim) and the Kentucky Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

110. Plaintiff brings this claim on behalf of himself and the Kentucky Subclass.

111. The Fire Risk Vehicles are and were at all relevant times "goods" within the meaning of Kentucky Rev. Stat. §§ 355.2-105(1) and 355.2A-103(h).

112.   FCA was at all relevant times a "seller" and "merchant" with respect to the Fire Risk Vehicles under Kentucky Rev. Stat. §§ 355.2-103 and 355.2-104, and, with respect to leases, is and was at all relevant times a "lessor" of the Fire Risk Vehicles under Kentucky Rev. Stat. § 355.2A-103.

113.   Plaintiff and Kentucky Subclass members are "buyers" or "lessees" within the meaning of Kentucky Rev. Stat. §§ 355.2-103(1) and 355.2A-103(n).

114.   Under Kentucky law, an implied warranty of merchantability attaches to the Fire Risk Vehicles. Kentucky Rev. Stat. §§ 355.2-314.

115.   The Fire Risk Vehicles were not merchantable when sold or leased because they pose an unreasonable risk of underhood fire due to the Spontaneous Fire Risk as described herein. Without limitation, the Fire Risk Vehicles share a common defect in that they are all equipped with a power steering pump electrical connector that makes the vehicles susceptible to a risk of spontaneous combustion, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Fire Risk Vehicles as well as their homes, passengers and bystanders. This defect renders the Fire Risk Vehicles when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

116.   FCA breached the implied warranty of merchantability by selling Fire Risk Vehicles containing defects leading to the sudden incineration of the vehicles during ordinary operating conditions, or while off and parked. This defect has

deprived Plaintiff and the Kentucky Subclass members of the benefit of their bargain.

117.   Plaintiff and the other Kentucky Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Fire Risk Vehicles to Plaintiff and Kentucky Subclass members.

118.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Kentucky Subclass members have been damaged in an amount to be determined at trial.

## COUNT V

### UNJUST ENRICHMENT
### (COMMON LAW)
### (Alleged by Plaintiff Jeremy Reid on behalf of the Kentucky Subclass)

119.   Plaintiff Jeremy Reid ("Plaintiff" for purposes of this claim) and the Kentucky Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

120.   Plaintiff brings this claim on behalf of himself and the Kentucky Subclass.

121.   FCA has received and retained a benefit from Plaintiff and Kentucky Subclass members and inequity has resulted.

122.   FCA has benefitted from selling, leasing, and distributing the Fire Risk Vehicles for more than they were worth as a result of FCA's conduct, and Plaintiff

and Kentucky Subclass members have overpaid for the Fire Risk Vehicles and been forced to pay other costs.

123. Thus, Plaintiff and Kentucky Subclass conferred a benefit on FCA.

124. It is inequitable for FCA to retain these benefits.

125. Plaintiff and Kentucky Subclass members were not aware of the true facts about the Fire Risk Vehicles and did not benefit from FCA's conduct.

126. FCA knowingly accepted the benefits of its unjust conduct.

127. As a result of FCA's conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

**3. Oregon**

**COUNT VI**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER OREGON LAW
(Or. Rev. Stat. §72.3140)
(Alleged by Plaintiff Wayne Hintergardt on behalf of the Oregon Subclass)**

128. Plaintiff Wayne Hintergardt ("Plaintiff" for purposes of this claim) and the Oregon Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

129. Plaintiff brings this claim on behalf of himself and the Oregon Subclass.

130. FCA is a "merchant" within the meaning of Or. Rev. Stat. § 72.1040(1), and "seller" of motor vehicles within the meaning of Or. Rev. Stat. § 72.1030(1)(d).

131. The Fire Risk Vehicles are "goods" under Or. Rev. Stat. § 72.5010 (*see* Or. Rev. Stat. § 72.1030(2)(m)). Under Or. Rev. Stat. § 72.3140, an implied warranty of merchantability attaches to the Fire Risk Vehicles.

132. The Fire Risk Vehicles were not merchantable when sold or leased because they pose an unreasonable risk of underhood fire due to the Spontaneous Fire Risk as described herein. Without limitation, the Fire Risk Vehicles share a common defect in that they are all equipped with a power steering pump electrical connector that makes the vehicles susceptible to a risk of spontaneous combustion, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Fire Risk Vehicles as well as their homes, passengers and bystanders. This defect renders the Fire Risk Vehicles when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

133. FCA breached the implied warranty of merchantability by selling Fire Risk Vehicles containing defects leading to the sudden incineration of the vehicles during ordinary operating conditions, or while off and parked. This defect has deprived Plaintiff and the Oregon Subclass members of the benefit of their bargain.

134. Plaintiff and the Oregon Subclass were and are third-party beneficiaries of FCA's contracts with FCA-certified/authorized retailers who sold or leased the Fire Risk Vehicles to Plaintiff and the Oregon Subclass.

135.   FCA was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Fire Risk Vehicles by the filing of their initial complaints and by consumer complaints to NHTSA regarding the defect that is the subject of this lawsuit. In addition, Plaintiff's counsel sent notice letters to FCA to the extent such notice is required. FCA has failed to remedy the Spontaneous Fire Risk within the requisite time period. Plaintiff and the Oregon Subclass seek all damages and relief to which they are entitled.

136.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the Oregon Subclass members have been damaged in an amount to be determined at trial.

### COUNT VII

### UNJUST ENRICHMENT
### (COMMON LAW)
**(Alleged by Plaintiff Wayne Hintergardt on behalf of the Oregon Subclass)**

137.   Plaintiff Wayne Hintergardt ("Plaintiff" for purposes of this claim) and the Oregon Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

138.   Plaintiff brings this claim on behalf of himself and the Oregon Subclass.

139.   FCA has received and retained a benefit from Plaintiff and the Oregon Subclass members and inequity has resulted.

140.   FCA has benefitted from selling, leasing, and distributing the Fire Risk Vehicles for more than they were worth as a result of FCA's conduct, and Plaintiff and the Oregon Subclass members have overpaid for the Fire Risk Vehicles and been forced to pay other costs.

141.   Thus, Plaintiff and the Oregon Subclass conferred a benefit on FCA.

142.   It is inequitable for FCA to retain these benefits.

143.   Plaintiff and the Oregon Subclass were not aware of the true facts about the Fire Risk Vehicles and did not benefit from FCA's conduct.

144.   FCA knowingly accepted the benefits of its unjust conduct.

145.   As a result of FCA's conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

**4.    Tennessee**

## COUNT VIII

### UNJUST ENRICHMENT
### (COMMON LAW)
**(Alleged by Plaintiff Mike Crowell on Behalf of the Tennessee Subclass)**

146.   Plaintiff Mike Crowell ("Plaintiff" for purposes of this claim) and the Tennessee Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

147.   Plaintiff brings this claim on behalf of himself and the Tennessee Subclass.

- 45 -

148. FCA has received and retained a benefit from Plaintiff and Tennessee Subclass members and inequity has resulted.

149. FCA has benefitted from selling, leasing, and distributing the Fire Risk Vehicles for more than they were worth as a result of FCA's conduct, and Plaintiff and Tennessee Subclass members have overpaid for the Fire Risk Vehicles and been forced to pay other costs.

150. Thus, Plaintiff and Tennessee Subclass conferred a benefit on FCA.

151. It is inequitable for FCA to retain these benefits.

152. Plaintiff and Tennessee Subclass were not aware of the true facts about the Fire Risk Vehicles and did not benefit from FCA's conduct.

153. FCA knowingly accepted the benefits of its unjust conduct.

154. As a result of FCA's conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class and Subclasses, respectfully request that the Court enter judgment in their favor and against FCA, as follows:

A. Certification of the proposed Nationwide and State Subclasses, including appointment of Plaintiffs' counsel as Class Counsel;

B.      A repair for the Spontaneous Fire Risk and restitution, including at the

election of Class and Subclass members, recovery of the purchase price of their Fire

Risk Vehicles, or the overpayment for their vehicles;

C.      Damages, including punitive damages, costs, and disgorgement in an

amount to be determined at trial;

D.      An order requiring FCA to pay both pre- and post-judgment interest on

any amounts awarded;

E.      An award of costs and attorneys' fees; and

F.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.


DATED: November 7, 2024                 Respectfully submitted,

                                        */s/ E. Powell Miller*
                                        E. Powell Miller (P39487)
                                        Dennis A. Lienhardt (P81118)
                                        Dana E. Fraser (P82873)
                                        **THE MILLER LAW FIRM PC**
                                        950 W. University Drive, Suite 300
                                        Rochester, MI 48307
                                        Telephone: (248) 841-2200
                                        epm@millerlawpc.com
                                        dal@millerlawpc.com
                                        def@millerlawpc.com

                                        **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                        Steve W. Berman
                                        1301 Second Avenue, Suite 2000

Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rachel E. Fitzpatrick
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 224-2626
rachelf@hbsslaw.com

*Counsel for Plaintiffs and the Putative Class*